**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Lakes and Parks Alliance of Minneapolis,
a Minnesota non-profit corporation

                Plaintiff,

vs.

Federal Transit Administration, an agency
of the United States; the Metropolitan
Council,  an agency of the State of
Minnesota; and Susan Haigh, individually
and in her official capacity as the Chair of
the Metropolitan Council.

                Defendants.

_____

Case No. _____

**COMPLAINT**

      Plaintiff Lakes and Parks Alliance of Minneapolis for its Complaint against

Defendants Federal Transit Administration, the Metropolitan Council, and Susan Haigh,

individually and in her official capacity as Chair of the Metropolitan Council, states as

follows:

## NATURE OF THE ACTION

      1.     This is an action for declaratory and injunctive relief pursuant to the

National Environmental Policy Act ("NEPA"), the Minnesota Environmental Policy Act

("MEPA"), and the Minnesota Light Rail Transit Statutes, § 473.3993 et seq.

      2.     In this action, the Lakes and Parks Alliance of Minneapolis seeks to compel

the Federal Transit Administration, the Metropolitan Council, and Susan Haigh to

properly comply with federal and state laws in carrying out the environmental review

required for the Southwest Light Rail Transit ("SWLRT") project.  The current plans for the SWLRT call for the light rail to pass through the Kenilworth Corridor, which "is a significant part of the City's chain of lakes park system, one of the most prized, highly used recreational attractions in the region."[1]  Under the design plan currently selected by the Metropolitan Council, the SWLRT will pass through this environmentally sensitive area partially in shallow tunnels and partially at-grade.  This design plan has not been subject to the environmental review required by federal and state statutes, including the assessment of reasonable alternatives to the use of the Kenilworth Corridor and appropriate measures for mitigating adverse environmental impacts.

3.     By moving forward with the municipal consent process before the completion of this review, the defendants have violated federal and state environmental statutes, which for forty-plus years have required a full environmental review and assessment of all alternatives *before* a project design is chosen.

## PARTIES

4.     Plaintiff Lakes and Parks Alliance of Minneapolis ("Lakes and Parks Alliance") is a Minnesota non-profit corporation, which has concerns about the potential environmental impacts of the Southwest Light Rail Transit ("SWLRT") project and the noncompliance of the SWLRT approval process with federal and state law.  Individual members of the Lakes and Parks Alliance live or work near and/or frequently use and enjoy the environmental resources in the Kenilworth Corridor, and they will be injured by

---

[1] Mem. of Understanding between Metropolitan Council and City of Minneapolis, Ex. 1 ¶ 3, released  July 8, 2014, available at http://www.metrocouncil.org/News-Events/Transportation/News-Articles/FINAL-MOU-design.aspx.

the environmental harm that will result if the SWLRT project moves forward without the proper environmental review.

5.      Defendant Federal Transit Administration ("FTA") is an agency within the U.S. Department of Transportation that provides financial and technical assistance to local public transit systems.  Its main office is located in Washington, DC.  The FTA is the federal lead agency under NEPA for the SWLRT project.

6.      Defendant Metropolitan Council is the regional policy-making body, planning agency, and transit services provider for the Twin Cities metropolitan region. Its main office is located in St. Paul, Minnesota.  The Metropolitan Council is the responsible governmental unit under MEPA for the environmental review of the SWLRT project, and the entity responsible for planning, designing, acquiring, constructing and equipping the SWLRT pursuant to the Minnesota Light Rail Transit Statutes.

7.      Defendant Susan Haigh resides in St. Paul, Minnesota and is the Council Chair of the Metropolitan Council ("Council Chair").  The Council Chair has supervisory authority over the Metropolitan Council's participation in the environmental impact statement process under NEPA and MEPA and the municipal consent process. Accordingly, she has a special relation to the Metropolitan Council's violation of these laws.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 11 U.S.C. § 1331, as the claim under NEPA and NEPA regulations arises under the laws of the United States.

9.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims under MEPA and MEPA regulations and Minn. Stat. § 473.3993, as these claims are so related to the claim under NEPA that they form part of the same case or controversy under Article III of the United States Constitution.

10.     In addition, the Court has the power to declare the rights and legal relations of the parties pursuant to 28 U.S.C. § 2201 *et seq*.  There exists between Plaintiff and Defendants an actual, justiciable controversy for which Plaintiff is entitled to have a declaration of rights.

11.     Venue in this District is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in Minnesota.

12.     This Court has personal jurisdiction over the FTA as it is the federal lead agency under NEPA and the provider of federal funds for the SWLRT project, which is being built in Minnesota.  The Court has personal jurisdiction over the Metropolitan Council as it is a political subdivision of the State of Minnesota and is located in St. Paul, Minnesota.  The Court has personal jurisdiction over the Council Chair as a resident of Minnesota.

<u>**CONDUCT GIVING RISE TO VIOLATIONS OF LAW**</u>

**A.     The Southwest Light Rail Transit Project**

13.     The SWLRT project is a proposed light rail line that would run from downtown Minneapolis for nearly 16 miles through the communities of St. Louis Park, Hopkins, Minnetonka, and Eden Prairie.

14.     Funding for the SWLRT project is being provided by the FTA, the state of Minnesota, the Counties Transit Improvement Board (which has Anoka, Dakota, Hennepin, Ramsey, and Washington counties as its members), and the Hennepin County Regional Railroad Authority.

15.     The preliminary design plans for the SWLRT developed by the Metropolitan Council, which have been submitted to local city councils and Hennepin County for approval, call for the SWLRT to pass through the Kenilworth Corridor, an environmentally sensitive area approximately one and a half miles long between Cedar Lake and Lake of the Isles in Minneapolis.  Presently, a popular bicycle and pedestrian trail, used by several thousand people each day, runs through the Kenilworth Corridor as do freight rail tracks.

16.     Under the current plans, SWLRT trains would pass through the southern half of the Kenilworth Corridor in two shallow tunnels, then emerge from the ground to pass over the historic channel connecting Cedar Lake and Lake of the Isles on a new bridge before continuing at grade through the northern portion of the corridor.  The freight rail tracks would remain in the corridor, and would pass over the historic channel on a separate new bridge.

**B.      Environmental Review and the Draft Environmental Impact Statement**

17.     For major governmental actions that create a potential for significant environmental effects, NEPA and MEPA require a thorough environmental review before the project may be approved.

18.     The SWLRT is a major governmental action that has the potential to cause significant environmental effects, and accordingly the preparation of an environmental impact statement pursuant to NEPA and MEPA regulations is required for the project.

19.     The environmental impact statement ("EIS") requirements begin with a process that engages the public and affected groups in determining the scope of the environmental review of the proposed project ("Scoping Process").  The purpose of the Scoping Process is to obtain public input on the project purpose, to identify environmental issues associated with the proposed project that will require detailed analysis, and to identify reasonable alternatives to the proposed project, which will be assessed in order to compare their respective environmental impacts to those of the proposed project.  The Scoping Process culminates in a decision by the responsible governmental unit, which sets forth the potential environmental impacts and reasonable alternatives to be addressed in detail through the EIS process ("Scoping Decision").

20.     Next, a draft environmental impact statement ("DEIS") is prepared by the project sponsor and circulated for public review and comment.  The DEIS documents the potential social, economic, and environmental benefits and impacts of the proposed project, any proposed measures to mitigate adverse impacts, and reasonable alternatives to the project, as set forth in the Scoping Decision

21.     After public input has been received and further review performed, a final environmental impact statement ("FEIS"), which provides additional detail and analysis, is prepared.  Finally, the state responsible governmental unit must deem the environmental analysis in the FEIS adequate, and the federal lead agency must issue a

record of decision regarding the environmental analysis, which authorizes the state agency to proceed with the project. If substantial changes are made to the project during the environmental review, they must be addressed in a supplemental DEIS or FEIS, depending on when the changes occur.

22.     Pursuant to federal NEPA regulations, no action that may (1) have an adverse environmental impact or (2) limit the choice of reasonable alternatives for the project may be taken until a full environmental review has been undertaken and the lead federal agency has issued a record of decision regarding the environmental analysis.

23.     Pursuant to state MEPA regulations, no action that will prejudice the ultimate decision on a project may be taken before a final environmental impact statement has been issued and deemed adequate by the responsible governmental unit.

24.     A Scoping Process for the SWLRT project was performed in fall 2008 by the Hennepin County Regional Railroad Authority, which was responsible for conducting the first portion of the environmental review. The results of the Scoping Process were included in a Scoping Summary Report dated January 2009.

25.     The Scoping Summary Report set forth the alternatives to be studied and analyzed in the DEIS. None of the alternatives proposed for study at that time included the construction of any tunnels in the Kenilworth Corridor. The Hennepin County Regional Railroad Authority unanimously voted to accept the SWLRT Scoping Summary Report on January 27, 2009 as its Scoping Decision.

26.     Next, the Hennepin County Regional Railroad Authority moved forward with the required environmental analysis based upon the Scoping Summary Report, and a

DEIS was drafted and released to the public in October 2012.  Nearly 1,000 public comments were received during the public review and comment period following the release of the DEIS.

27.     The DEIS considered seven alternatives for the SWLRT,[2] which included three strategies for dealing with the Kenilworth Corridor if one of the so-called build alternatives was chosen.  Those three strategies were the following: (1) rerouting the existing freight rail traffic through the City of St. Louis Park to provide adequate room for the SWLRT tracks in the Kenilworth Corridor; (2) rerouting the existing freight rail through the City of St. Louis Park and running the SWLRT through the Midtown Corridor instead of the Kenilworth Corridor; or (3) co-locating the SWLRT, freight rail, and bicycle/pedestrian trail at-grade through the entire Kenilworth Corridor.  None of these alternatives provided for the construction of any tunnels in the Kenilworth Corridor.

28.     After completion of the DEIS, responsibility for the environmental review process under MEPA, including the completion of the FEIS, was transferred from the Hennepin County Regional Railroad Authority to the Metropolitan Council, which took on the statutory responsibilities of a responsible governmental unit under MEPA.

---

[2] The seven alternatives analyzed were the following:  a No Build alternative; an Enhanced Bus alternative; two alternatives re-locating the existing freight rail service to the MN&S line in St. Louis Park and running the SWLRT through the Midtown Corridor (LRT 3C-1 and LRT 3C-2); two alternatives re-locating the existing freight rail service to the MN&S line in St. Louis Park with the SWLRT running at-grade through the Kenilworth Corridor (LRT 1A and LRT 3A); and, lastly, an alternative having the existing freight rail service and the SWLRT co-located at-grade through the Kenilworth Corridor (LRT 3A).

29.     In July 2013, the Metropolitan Council and the FTA gave notice that they intended to publish a Supplemental Draft Environmental Impact Statement ("SDEIS"), which would evaluate potential environmental impacts resulting from changes in the proposed design that were not documented in the DEIS.  The notice stated that the scope of the SDEIS would include, but would not be limited to examining the following areas: Eden Prairie LRT alignment and stations; the location of the LRT operations and maintenance facility, freight rail alignments (i.e., relocation and/or co-location in the Kenilworth Corridor) and other areas where the FTA and the Metropolitan Council determined additional information was needed.

30.     However, after the close of the comment period for the DEIS, and after the notice of the scoping for the SDEIS, additional alternatives not considered in the DEIS or referenced in the notice for the SDEIS came under consideration for the Kenilworth Corridor.

31.     St. Louis Park residents and the St. Louis Park City Council objected to the alternatives in the DEIS that rerouted freight rail traffic through that city.

32.     The option calling for co-location of the SWLRT and freight rail traffic at grade also had serious issues that weighed against its adoption.  The DEIS determined that co-location in the Kenilworth Corridor should not be recommended as the environmentally preferred alternative, as it did not meet the project's purpose and need and had strong potential for adverse environmental impacts.  Importantly, the DEIS found the co-location option would not adequately protect the environment or qualify of life in

the area, and it had high construction related impacts because of the complex construction staging required to rebuild the freight rail tracks.

33.    Accordingly, in early 2014, new options were discussed, including moving the SWLRT into shallow or deep tunnels through the Kenilworth Corridor while keeping the freight rail tracks and bicycle/pedestrian trail on the surface.

34.    In April 2014 the Metropolitan Council approved as the "locally preferred alternative" a plan that routed the SWLRT through the Kenilworth Corridor in two shallow tunnels, with trains emerging from the tunnels to pass over the historic channel between Cedar Lake and Lake of the Isles ("Tunnel Plan").  The Tunnel Plan has never been referenced in any Scoping Decision or Notice, nor has any part of the environmental review required by NEPA and MEPA been completed for the Tunnel Plan.

**C.    The Municipal Consent Process**

35.    After the Metropolitan Council approved the Tunnel Plan for the SWLRT project, it commenced the municipal consent process by submitting the plan to Hennepin County and to the cities of Minneapolis, St. Louis Park, Hopkins, Minnetonka, and Eden Prairie for approval.  "Municipal consent" by the county and the referenced cities is required by Minnesota Statute § 473.3994, which states that each city and county in which a light rail transit route is proposed to be located must  hold a public hearing and vote to approve or disapprove the physical design component of the preliminary design plans for the project.  Failure to approve or disapprove of the plans within 45 days after the public hearing qualifies as approval under the statute, unless an extension of time is

granted by the Metropolitan Council.  As defined by statute, the preliminary design plans must include a DEIS for the light rail transit facilities proposed.

36.     After the Metropolitan Council submitted the plans to the City of Minneapolis for approval, the City and the Metropolitan Council entered negotiations regarding potential changes to the project.  After extended negotiations, in July 2014 the City of Minneapolis and the Metropolitan Council announced an agreement under which the tunnel south of the historic Kenilworth Channel would remain in place, but the tunnel north of the Channel would be eliminated ("South Tunnel Deal").  Under the South Tunnel Deal, the SWLRT, freight rail service, and bicycle/pedestrian trail would all be co-located at grade north of the channel.

37.     On August 19, 2014, the City of Minneapolis held the required public hearing on the proposed SWLRT plans, including the South Tunnel Deal.  No DEIS analyzing the proposed project as modified was available for public review before or at the public hearing.

38.      By August 28, 2014, all six local governments had approved the preliminary SWLRT plans, with the City of Minneapolis approving the modification of the South Tunnel Deal to the preliminary SWLRT plans as proposed by the Metropolitan Council.  The City of St. Louis Park approved the preliminary SWLRT plans with the caveat that "no further study of the feasibility of rerouting freight traffic to the MN&S

Route in St. Louis Park will be undertaken, except as required for any continuing environmental review of the SWLRT project."[3]

39.     Upon information and belief, an SDEIS that will include an analysis of the South Tunnel Deal will not be completed and released to the public until 2015.

40.     Upon information and belief, the FEIS for the project as modified, including the South Tunnel Deal, is not expected to be released until the end of 2015.  A record of decision cannot be issued until after the FEIS has been completed.

41.     The Lakes and Parks Alliance wrote to the FTA in July 2014 to inform the FTA that the SWLRT environmental review process did not meet the requirements of federal and state law, and asking that the FTA refuse to provide further federal funding for the SWLRT project unless and until the Metropolitan Council appropriately supplemented the environmental review and fully complied with all applicable environmental laws and regulations.  In response, the FTA sent a letter to the Lakes and Parks Alliance dated August 15, 2014, stating that it monitors all federally assisted projects for NEPA compliance and that no cessation of funding is warranted for the SWLRT under the circumstances.

42.     Upon information and belief, the Metropolitan Council soon will ask the FTA for permission to move forward with the SWLRT project, including the South Tunnel Deal, even though the SDEIS analyzing the South Tunnel Deal has not been completed and the FEIS reviewing the SWLRT project has not been completed.

---

[3] Memorandum of Understanding between the Metropolitan Council and the City of St. Louis Park, http://www.stlouispark.org/light-freight-rail/recent-news.html.

## COUNT I
## VIOLATION OF NEPA REGULATIONS

43.    Plaintiff restates and realleges all foregoing paragraphs as if fully stated herein.

44.    NEPA requires that for every major federal action significantly affecting the quality of the human environment, a detailed statement be issued that analyzes

     i.  the environmental impact of the proposed action,

    ii.  any adverse environmental effects which cannot be avoided should the proposal be implemented,

   iii.  alternatives to the proposed action,

   iv.  the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

    v.  any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(C).

45.    Federal NEPA regulations limit the actions that may be taken during the pendency of an environmental review.  Until the lead federal agency issues a record of decision (after the issuance of a FEIS), no action concerning a proposal shall be taken which would "(1) Have an adverse environmental impact; or (2) Limit the choice of reasonable alternatives."  40 C.F.R. § 1506.1(a).

46.    Federal NEPA regulations also require that if a federal agency is considering an application from a non-federal entity, and the agency becomes aware that

the applicant is about to take an action that would have an adverse environmental impact or limit the choice of reasonable alternatives, the agency must promptly notify the applicant that the agency will take appropriate action to insure that the objectives and procedures of NEPA are achieved.  40 C.F.R. § 1506.1(b).

47.    The Metropolitan Council is both the governmental unit that will carry out the proposed SWLRT project and the responsible governmental unit that will make decisions about the adequacy of the environmental review for the SWLRT project.  The Council Chair has supervisory authority over the SWLRT project.

48.    The Metropolitan Council and the Council Chair have violated and continue to violate 40 C.F.R. § 1506.1(a) by limiting the choice of reasonable alternatives for the SWLRT project before the issuance of a record of decision on the environmental review by the following:

    a.  Selecting a particular SWLRT design, which includes the South Tunnel deal, to the exclusion of all others, prior to the issuance of a record of decision on the FEIS;

    b.  Initiating the municipal consent process on a particular SWLRT design, which includes the South Tunnel Deal, prior to the issuance of a record of decision on the FEIS;

    c.  Reaching an agreement with the City of Minneapolis approving the South Tunnel Deal, prior to the issuance of a record of decision on the FEIS; and

d.  Reaching an agreement with the City of St. Louis Park that the relocation of the freight rail tracks from the Kenilworth Corridor to St. Louis Park will no longer be considered, except as a sham for the purposes of the required state and federal environmental review.

49.  The FTA has violated 40 C.F.R. § 1506.1(b) because (1) it is an agency considering an application from the Metropolitan Council, a non-federal entity, (2) it was made aware, through the letter from the Lakes and Parks Alliance, that the Metropolitan Council has taken actions that limit the choice of reasonable alternatives for the SWLRT project, and (3) it has failed to notify the Metropolitan Council that it was going to take appropriate action to ensure the objectives and procedures of NEPA are achieved and has refused, as stated in its letter to the Lakes and Parks Alliance, to stop funding the project while it is out of compliance.

50.  Plaintiff is injured by these violations of federal regulations because its members live or work near and/or frequently use and enjoy the environmental resources in the Kenilworth Corridor.  Accordingly, they will be injured by the environmental harm that will result if the SWLRT project moves forward without the required environmental review.

51.  Plaintiff is entitled to a declaratory judgment stating that the FTA, the Metropolitan Council, and the Council Chair have violated and continue to violate NEPA regulation 40 C.F.R. § 1506.1 by, among other things, undertaking the municipal consent process before the issuance of the record of decision on the FEIS and accordingly, the

municipal consent obtained for the SWLRT design, including the South Tunnel Deal, is null and void.

52.     Plaintiff also is entitled to a declaratory judgment stating that the FTA, the Metropolitan Council, and the Council Chair must comply with 40 C.F.R. § 1506.1 by not allowing the limitation of the choice of reasonable alternatives for the SWLRT design, including approval of design plans through the municipal consent process, before a record of decision on the FEIS is issued.

53.     Plaintiff is further entitled to an injunction ordering the FTA, the Metropolitan Council, and the Council Chair to not take any further action that would limit the choice of reasonable alternatives on the SWLRT project—including the approval of design plans through the municipal consent process— before the record of decision is issued, and to an injunction ordering the FTA not to provide any further funding to the SWLRT project relating to the Kenilworth Corridor if that funding would limit the choice of reasonable alternatives for the SWLRT before the record of decision is issued.

## COUNT II
## VIOLATION OF MEPA REGULATIONS

54.     Plaintiff restates and realleges all foregoing paragraphs as if fully stated herein.

55.     MEPA requires that any major governmental action that has potential for significant environmental effects "shall be preceded by a detailed environmental impact

statement prepared by the responsible governmental unit." Minn. Stat. § 116D.04, subd. 2a.

56.    MEPA regulations require that the governmental unit that will carry out the proposed project "shall not take any action with respect to the project, including the acquisition of property, if the action will prejudice the ultimate decision on the project" until the FEIS has been deemed adequate by the responsible governmental unit. Minn. R. 4410.3100, subp. 2.

57.    The Metropolitan Council is both the governmental unit that will carry out the proposed project and the responsible governmental unit that will make decisions about the adequacy of the environmental review for the SWLRT project. The Council Chair has supervisory authority over the SWLRT project, including the environmental review process required by MEPA.

58.    The Metropolitan Council and the Council Chair have taken actions that will prejudice the ultimate decision on the SWLRT before the FEIS has been completed and deemed adequate by the following:

    a.  Selecting a particular SWLRT design, which includes the South Tunnel deal, to the exclusion of all others, prior to the completion of an SDEIS and the completion and approval of an FEIS that analyze the South Tunnel Deal;

    b.  Initiating the municipal consent process on a particular SWLRT design, which includes the South Tunnel Deal, prior to the completion of an

SDEIS and the completion and approval of an FEIS that analyze the South Tunnel Deal;

c.  Reaching an agreement with the City of Minneapolis approving the South Tunnel Deal, even though the South Tunnel Deal has not been studied in a DEIS and the entire SWLRT project has not been evaluated in an approved FEIS; and

d.  Reaching an agreement with the City of St. Louis Park that the relocation of the freight rail tracks from the Kenilworth Corridor to St. Louis Park will no longer be considered, except as a sham for the purposes of the required state and federal environmental review.

59.  These actions have violated and continue to violate Minnesota Regulation 4410.3100.

60.  Plaintiff is injured by the Metropolitan Council and the Council Chair's actions because Plaintiff's members live or work near and/or frequently use and enjoy the environmental resources in the Kenilworth Corridor.  Accordingly, they will be injured by the environmental harm that will result if the SWLRT project moves forward without the required environmental review.

61.  Plaintiff is entitled to declaratory judgment stating that the Metropolitan Council and the Council Chair's actions, including undertaking the municipal consent process before the FEIS is completed and deemed adequate, violate Minnesota Regulation 4410.3100 and accordingly, the municipal consent obtained for the SWLRT design, including the South Tunnel Deal, is null and void.

62.     Plaintiff also is entitled to declaratory judgment that the Metropolitan Council and the Council Chair must comply with Minnesota Regulation 4410.3100 by not allowing any further actions that prejudice the ultimate decision on the SWLRT project—including approval of design plans through the municipal consent process— before the FEIS has been completed and deemed adequate.

63.     Plaintiff is further entitled to an injunction ordering the Metropolitan Council and the Council Chair not to take any further action that would prejudice the ultimate decision on the SWLRT project—including the approval of design plans through the municipal consent process— before the FEIS has been completed and deemed adequate.

## COUNT III
## VIOLATION OF MINNESOTA STATUTE § 473.3994

64.     Plaintiff restates and realleges all foregoing paragraphs as if fully stated herein.

65.     Minnesota statutes require that cities and counties along the route of any proposed light rail transit hold a public hearing and then approve or disapprove the physical design component of the preliminary design plans for the light rail transit project through the municipal consent process.  Minn. Stat. § 473.3994, subd. 3.

66.     The same statutes define "preliminary design plan" as including a DEIS for the light rail transit facilities proposed.  Minn. Stat. § 473.3993, subd. 2.

67.     In violation of this requirement, the Metropolitan Council and the Council Chair have carried out the municipal consent process before a DEIS for the SWLRT

facilities proposed—i.e., the preliminary design plan including the South Tunnel Deal—
has been released.  Accordingly, the physical design component of the preliminary design
plans has been approved without having a DEIS for the proposed plan available for
consideration and comment at each municipality's public hearings.  Members of the
public have been unable to comment on the SWLRT facilities proposed in light of the
environmental analysis for the proposed facilities, and members of each municipality's
city council have been unable to consider the DEIS in making their decisions to approve
or disapprove the proposed plans.

68.    Plaintiff is injured by this action because Plaintiff's members live or work
near and/or frequently use and enjoy the environmental resources in the Kenilworth
Corridor.  Accordingly, they will be injured by the environmental harm that will result if
the SWLRT project moves forward without the required environmental review, which
must precede the municipal consent process.  Plaintiff is also injured by this action
because its members were unable to fully participate in the public hearings on municipal
consent because a DEIS for the proposed design was not available for review.

69.    Plaintiff is entitled to a declaratory judgment stating that the Metropolitan
Council and the Council Chair's actions violated Minnesota Statute § 473.3994, subd. 3
and accordingly, the municipal consent obtained for the SWLRT design, including the
South Tunnel Deal, is null and void.

70.    Plaintiff is further entitled to an injunction ordering the Metropolitan
Council and the Council Chair to defer re-submission of the SWLRT project plans for
approval by Hennepin County and the Cities of Minneapolis, St. Louis Park, Hopkins,

Minnetonka, and Eden Prairie until after the completion of the SDEIS, the completion of

the FEIS, and the issuance of the record of decision.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Declaratory judgment declaring the following:

  a. The FTA's, the Metropolitan Council's, and the Council Chair's

   actions have violated and remain in violation of NEPA regulation 40

   C.F.R. § 1506.1 by, among other things, undertaking the municipal

   consent process before the issuance of the record of decision on the

   FEIS and accordingly, the municipal consent obtained for the

   SWLRT design, including the South Tunnel Deal, is null and void.

  b. The FTA, the Metropolitan Council, and the Council Chair must

   comply with 40 C.F.R. § 1506.1 by not allowing the limitation of the

   choice of reasonable alternatives for the SWLRT design, including

   through the municipal consent process, before a record of decision is

   issued.

  c. The Metropolitan Council and the Council Chair's actions, including

   undertaking the municipal consent process before the FEIS is

   completed and deemed adequate, have violated and remain in

   violation of Minnesota Regulation 4410.3100 and accordingly, the

   municipal consent obtained for the SWLRT design, including the

   South Tunnel Deal, is null and void.

d.  The Metropolitan Council and the Council Chair must comply with Minnesota Regulation 4410.3100 by not allowing any further actions that prejudice the ultimate decision on the SWLRT project— including the approval of the design plans through the municipal consent process—before the FEIS has been completed and deemed adequate.

e.  The Metropolitan Council and the Council Chair's actions have violated and remain in violation of Minnesota Statute § 473.3994, subd. 3, and accordingly, the municipal consent obtained for the SWLRT design, including the South Tunnel Deal, is null and void.

f.  The Metropolitan Council and the Council Chair must comply with the municipal consent process set forth in Minnesota Statute § 473.3994.

2.  An injunction ordering the following:

a.  The FTA, the Metropolitan Council, and the Council Chair are ordered not to take any further action that would limit the choice of reasonable alternatives on the SWLRT project—including the approval of design plans through the municipal consent process— before the record of decision is issued.

b.  The Metropolitan Council and the Council Chair are ordered not to take any further action that would prejudice the ultimate decision on the SWLRT project—including the approval of the design plans

22

through the municipal consent process— before the FEIS has been

completed and deemed adequate.

c. The Metropolitan Council and the Council Chair are ordered to defer

re-submission of the SWLRT project plans for approval by

Hennepin County and the Cities of Minneapolis, St. Louis Park,

Hopkins, Minnetonka, and Eden Prairie until after the completion of

the SDEIS, the completion of the FEIS, and the issuance of the

record of decision.

d. The FTA is ordered not to provide any further funding to the

SWLRT project relating to the Kenilworth Corridor if that funding

would limit the choice of reasonable alternatives for the SWLRT

before the record of decision is issued.

3.     Awarding Plaintiff its costs, disbursements and such other and further relief

as this Court may deem just and equitable under the circumstances.

Dated: September 2, 2014

**GRAY, PLANT, MOOTY, MOOTY**      **BASSFORD REMELE**
    **& BENNETT, P.A.**


By  /s/Thomas L. Johnson              By  /s/Lewis A. Remele, Jr.
      Thomas L. Johnson (#52037)         Lewis A. Remele, Jr. (#90724)
      Joy R. Anderson (#388217)           J. Scott Andresen (#292953)
500 IDS Center                         33 South Sixth Street, Suite 3800
80 South Eighth Street                Minneapolis, MN 55402-3707
Minneapolis, Minnesota 55402      Telephone: 612.376.1601
Telephone: (612) 632-3000         Fax:   612.746.1201
Fax: (612) 632-4444               lremele@bassford.com
thomas.johnson@gpmlaw.com      sandresen@bassford.com
joy.anderson@gpmlaw.com

ATTORNEYS FOR PLAINTIFF LAKES AND PARKS ALLIANCE OF MINNEAPOLIS


GP:3704799 v4